UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 24-059-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MELVIN P. LITTERAL, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Melvin Litteral has filed three *in limine* motions in advance of his trial, which is scheduled to begin on October 1, 2024.  Defendant Litteral has moved to exclude: (1) statements from a jail call with Beverly Arnold and social media posts made by Arnold; (2) Lesa Pelfrey as a witness at trial and any testimony or reference to statements Pelfrey made to FBI Special Agent Hanna; and (3) any other statements made by third parties to the FBI during its investigation of this matter.  [Record Nos. 19–21]

## I.    Background

While out to eat with Arnold, Litteral allegedly made racially charged statements directed at Omar Shalash and his family, who were celebrating Ramadan by breaking their fast at a Cheddar's restaurant.  [Record No. 15]  Two women in the Shalash family were wearing hijabs.  [*Id.*]  After the alleged statements were made, Mr. Shalash followed defendant Litteral into the restaurant's vestibule and asked, "What's your problem?" while gesturing with his hands.  [*Id.*]  In response, Litteral allegedly pulled out a handgun, pointed it toward Shalash's head, and asked, "Do you want to die Arabia?"  [*Id.*]

1

The government charged Litteral with two crimes related to the alleged incident between the defendant and Omar Shalash.  The first is for interfering with a federally protected activity in violation of 18 U.S.C. § 245.  The second charge is that Litteral used, carried, or brandished a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  After receiving the government's proposed exhibit and witness lists, Litteral filed the three motions *in limine*.  The defendant's motion will be granted, in part, and denied, in part, for the reasons outlined below.

## II.     Legal Standard

A motion *in limine* seeks "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)).  Such motions are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).  The standard for granting an *in limine* motion is essentially that for evidentiary rulings in general: the evidence must be "clearly inadmissible for any purpose." *King v. Taylor*, No. 10-CV-96, 2013 WL 2297183, at *2 (E.D. Ky. May 24, 2013).

Rule 402 of the Federal Rules of Evidence provides "that evidence is admissible if it is 'relevant.'" *United States v. Dunn*, 805 F.2d 1275, 1281 (6th Cir. 1986).  Rule 401 defines "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," and that "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  A court may nevertheless exclude evidence that is relevant under Rule 401 if "its probative value is substantially outweighed by a danger of one or more of the

2

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

While district courts enjoy "broad discretion in determining the relevancy of evidence and in passing upon its admissibility under Rule 401." [*Id.*], "the 'better practice' is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds." *Middleton v. SelecTrucks of Am., LLC*, 589 F. Supp. 3d 687, 691 (W.D. Ky. 2022) (citation omitted). As such, a court's ruling *in limine* is "no more than a preliminary, or advisory, opinion" that may be altered or amended at trial. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)).

### III.   Discussion

### A.  Statements and Posts Involving Beverly Arnold

The government seeks to introduce a recording of a jail call between Arnold and Litteral. [USA Exhibit List] The two have purportedly been dating for four years. [Record No. 19] Arnold's voice is loud and clear during the call, while Litteral's voice is quiet and difficult to discern. [USA Exhibit List No. 7] The recorded portion begins with Arnold saying, "He said . . ." and then Arnold makes disparaging remarks about a state judge assigned to Litteral's case. Litteral then interjects, "Oh yes, she played the race card bad . . ." Arnold continues, "That's what he said . . ." then states, "she was being a bitch." Litteral interrupts, but his words are unintelligible. During the call, Arnold uses the phrase "Black bitch" in referring to the judge but does not make clear whether this statement is one she is parroting from the speaker she first mentioned. Appearing to discuss the defendant's case, Arnold then indicates, "This is a towel head, and these people came over and tried to destroy our country, and are doing so from the inside-out like a Trojan Horse . . ." The defendant's response,

3

however, is difficult to discern.  Arnold continues and Litteral interrupts saying, "even the guard said she runs her mouth and shit too much."

The admission of audio "recordings at trial rests within the sound discretion of the trial court." *United States v. Robinson,* 707 F.2d 872, 876 (6th Cir. 1983).   To be admissible, recordings must "be authentic, accurate and trustworthy," as well as "audible and sufficiently comprehensible for the jury to consider the contents."  *Id.*  A recording is "inadmissible if the 'unintelligible portions are so substantial as to render the recording as a whole untrustworthy.'" *Id.*

And while all relevant evidence is admissible as a general matter, it may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Although not grounds for excluding prejudicial evidence, the Court considers the availability of other means of proof in evaluating the probative value of such evidence.  *See United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018) (quoting *Old Chief v. United States*, 519 U.S. 172, 182–83 (1997)).

The jail call, while relevant, is subject to exclusion under FRE 403 because the factors indicate its probative value is substantially outweighed by the dangers enumerated above. First, it is difficult to understand Litteral's responses to Arnold.  However, in support of its admissibility, the government argues that, "the defendant did not object to or correct any of [Arnold's] statements. . . ."  But because some of the defendant's statements are unintelligible, the inclusion of the call would be unfairly prejudicial to Litteral.  Further, the jury may be misled to believe the defendant did not object, when it is possible he did.  Playing the call for the jury is likely to result in undue delay because of the poor recording quality of the

4

defendant's voice.  Because the recording includes critical responses that are unintelligible, exclusion is appropriate.

Second, Arnold makes multiple inflammatory statements during the call.  Phrases such as "black bitch" and "towel head" are likely to elicit an emotional response from the jury.  Arnold's language is unfairly prejudicial to the defendant and could be an impetus for the jury to decide the case on an improper basis.  Arnold's discernable disparaging statements, coupled with the defendant's unintelligible responses, suggest exclusion is appropriate because the audible statements are highly prejudicial to Litteral.

Third, there are multiple instances during the call when both Arnold and Litteral reference a speaker before making a disparaging remark.  This increases the risk of confusing the jury.  Phrases such as "he said," "that's what he said," and "even the guard said," suggest that a portion of their conversation was relaying the words of others.  For Arnold's statements, it is unclear when she is parroting another as opposed to speaking for herself.  This lack of clarity regarding the speaker risks confusing the jury, undue delay, and being unfairly prejudicial to the defendant.

Finally, the recording is needlessly cumulative because the government may call Arnold and others as witnesses regarding the events at the restaurant. The government argues that the jail call is essential to its case to demonstrate that the defendant was motivated to commit the offense to impress his girlfriend, who holds "bigoted views." [Record No. 28] But the government may call Arnold to testify and will likely seek to introduce other evidence that Litteral "accused the victim and people like him of owning the Cheddar's restaurant in the same way they either owned or were trying to take over 'half of the gas stations.'" [*Id.*] Additionally, the United States has footage from the restaurant incident and several witnesses

who will be called to testify about it.  This renders the recording less probative than it otherwise may be and, at this stage, it appears needlessly cumulative.

Next, the government states that it does not intend to introduce Arnold's social media posts or the statements she made to Agent Hanna unless testimony triggers their relevance. [*Id*.]  The Court, therefore, will grant the defendant's request to exclude both items at this time with the understanding that the government may ask the Court to reconsider this part of its ruling during trial.

### B.  Lesa Pelfrey at Trial and Her Statements

The defendant's ex-girlfriend, Lesa Pelfrey, made statements to the FBI that the defendant also seeks to exclude.  [Record No. 20]  Additionally, he seeks to exclude Pelfrey as a witness at trial.  [*Id.*]  The government concedes that it cannot introduce statements Pelfrey gave to the FBI agent if she does not testify during trial.  [Record No. 29]  However, it contests excluding her as a potential witness.  [*Id.*]  The Court agrees that it is inappropriate to exclude Pelfrey as a potential witness at this stage of the proceeding.

### C.  Statements Made by Third Parties During the Investigation

Finally, the defendant asks that third-party statements made to FBI agents during investigation be excluded.  [Record No. 21] The United States concedes that it cannot introduce these statements through the agent alone.  [Record No. 30]  However, it plans to call these witnesses during trial, and they will be subject to cross-examination.  The defendant's motion will be granted to the extent that it prevents the government from presenting witness testimony solely through FBI agents.

### IV.   Conclusion

Based on the foregoing analysis and discussion, it is hereby

6

**ORDERED** as follows:

1.      The Defendant's motion *in limine* [Record No. 19], is **GRANTED**, as to the jail call, Arnold's Facebook posts, and to the extent that it prevents the government from presenting Arnold's statements solely through FBI agents, consistent with this Memorandum Opinion and Order.

2.      The Defendant's motion *in limine* [Record No. 20] is **GRANTED**, to the extent that it prevents the government from presenting Pelfrey's statements solely through FBI agents, and **DENIED**, regarding the exclusion of Pelfrey as a potential witness, consistent with this Memorandum Opinion and Order.

3.      The Defendant's motion *in limine* [Record No. 21] is **GRANTED**, to the extent that the government present other witness testimony solely through FBI agents, consistent with this Memorandum Opinion and Order.

Dated: September 27, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky